(Decided 8th March, 1877.)

THE MUTUAL LIFE INSURANCE COMPANY OF BALTIMORE *vs.* CAROLINE STIBBE.

*Immaterial question—Deed poll—Contract—Parties who may sue on policy of insurance—For what purpose and to what extent Preliminary Proofs of death are admissible as Evidence at the trial—Questions of law and fact—What was the Direct Cause of Death a question for the jury.*

In an action on a policy of life insurance, after the plaintiff had closed her case, the defendant objected to the admissibility of the policy in evidence, and moved the Court to exclude it from the consideration of the jury, because the plaintiff had not offered in evidence the "application" for insurance. On appeal from the action of the Court below in overruling the the motion, it was HELD:

That the question had become immaterial, inasmuch as the "application" was afterwards given in evidence by the defendant.

The insurance was effected on the life of S. The application for insurance showed that the wife of S. was one of the contracting parties. It was signed with her name as well as her husband's. He signed as the person whose life was insured, and she as the person for whose benefit the insurance was made. The covenant in the body of the policy was, "to pay to S. at the time named, if he should be then living, and if he should die previous thereto, to pay to his wife, C., or her legal representatives." The policy was executed by the company alone. HELD:

1st. That the policy was to be regarded as a deed poll.

2nd. That the covenant therein to pay to the wife was made directly with her, and there could be no valid objection to her maintaining a suit upon it in her own name.

By the terms of the policy the amount insured was payable in ninety days after satisfactory proofs of death. At the trial, the proofs of death furnished in compliance with this requirement were offered in evidence by the plaintiff, for the purpose of showing such compliance. HELD :

1st. That the same were admissible for that purpose and for no other, and their sufficiency was a question for the Court to determine.

2nd. That the said proofs, being also offered in evidence by the defendant, were admissible as declarations of the plaintiff.

3rd. That the statement of the plaintiff as to the cause of the death of the insured, accompanying said preliminary proof, did not properly constitute any part of the proof of death required by the policy, but was the mere declaration made by her of her opinion and belief as to the cause of the death, and as such the defendant was entitled to rely upon it before the jury; not as conclusive, but as evidence to be considered by the jury in connection with all the other evidence in the case, upon the question as to the actual cause of the death of the insured, a question which .the jury alone could decide.

4th. That it would have been error to instruct the jury that any part of the evidence as to the cause of the death was to be taken by itself as conclusive.

The statement of the physician was that the disease of which the insured died, was "*cerebral congestion,* caused proximately by mental anxiety and remotely by drink." By the terms of the policy, it was to be void :"if the death shall be caused by the use of intoxicating drink or opium." HELD :

That the meaning of this provision was that the things prohibited, should be the *direct* cause of the death, in order to avoid the policy, and it was not error so to instruct the jury.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—The plaintiff offered the following prayer:

If the jury shall find from the evidence that Caroline Stibbe, the plaintiff, is the widow of Solomon D. Stibbe,

and that the defendant-corporation executed the policy of insurance offered in evidence, and delivered the same to the said Solomon, and that he paid to the defendant all the premiums due thereon up to the time of his death, and that he died on or about the twenty-ninth day of January, 1875, and that the plaintiff exhibited to the defendant the proofs of death which were offered in evidence on or about the ninth day of February, 1875, then the jury must find a verdict for the plaintiff, unless the jury shall find from the evidence that Solomon D. Stibbe made an untrue statement in answer to the fifth interrogatory in his application for the policy of insurance; or unless the jury shall find from the evidence that the direct cause of Solomon's death was the use of intoxicating drink, and it will not be sufficient to defeat the plaintiff's right to a verdict, if the jury shall find from the evidence that the use of intoxicating drink was the indirect cause of Solomon's death.

And the defendant offered the five following prayers:

1. The defendant prays the Court to instruct the jury, that the affidavit of the plaintiff contained in the proof of death offered in evidence by her, is conclusive upon her as to the cause of the death of the insured, and that the cause of death set forth in said affidavit is not such as to entitle her to recover in this action upon the policy of insurance sued on in this case.

2. That if the deceased died from a different cause from that set forth in the affidavit of the plaintiff contained in the proofs of death offered in evidence by her, then the plaintiff is not entitled to recover in this action.

3. The defendant prays the Court to instruct the jury, that the plaintiff is not entitled to recover in this action, and that it is not competent for her to sue in her own name and in her own right upon the policy of insurance offered in evidence in this case.

4. That if the jury find from the evidence that the death of the deceased was occasioned by the use of intoxi-

cating liquor, the plaintiff is not entitled to recover in this action.

5. That if the jury find that at the time the policy of insurance was issued, the insured had been a man whose habits had not been sober and temperate, the plaintiff is not entitled to recover.

The Court (GAREY, J.,) granted the plaintiff's prayer, and granted the fourth and fifth prayers of defendant, and refused the first, second and third prayers of defendant. The defendant excepted.

The jury rendered a verdict for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON and MILLER, J.

*Charles Marshall,* for the appellant.

There was error in granting the plaintiff's prayer, because it submits to the jury a question of law, viz., What is the direct, and what the indirect cause of death? The question is a mixed question of law and fact, and the Court should have instructed the jury as to what is in law a direct or proximate cause of death, leaving the jury to find whether the facts proved established such a cause of death in this case. And because it was calculated to mislead the jury.

It is difficult to understand what is meant by the expressions "direct cause" and "indirect cause" of death, used in the prayer.

The proof of death made by plaintiff herself, and offered in evidence by her, and affirmed by her to be true in her testimony, shows that mental anxiety caused the insured to indulge in drink, and the anxiety *and drink* killed him.

Now it may be said that the insured drank from mental anxiety, and therefore the direct cause of death, the *causa causans,* was mental anxiety.

So if he drank because he loved liquor, the direct cause, we suppose, would not be the liquor itself, but the love of it ; and under such a construction, the provisions of the policy on the subject of death from drink, would become nugatory.

If death was caused *by drink*, although there may have been other contributing causes, drink was a proximate cause of death, and the jury should have been so instructed. If mental anxiety alone did not cause death, but mental anxiety *and drink* did, then drink was the proximate cause of death.

There was error in rejecting the defendant's first and second prayers.

The plaintiff herself had made affidavit to the cause of death, and that statement bound her. In fact, she reiterated it when examined as a witness. In this case, she was bound by the affidavit, if for no other reason, because there was absolutely no evidence to the contrary.

The evidence of the attending physician does not conflict with the plaintiff's affidavit as to the cause of death. *Irving vs. Excelsior Fire Ins. Co.*, 1 *Bosworth*, 507, 509 ; *Campbell vs. Charter Oak Fire & Marine Ins. Co.*, 10 *Allen*, 213 ; *Mutual Benefit Life Ins. Co. vs. Newton*, 22 *Wallace*, 32.

The defendant's third prayer is based upon the policy itself. This being a contract between the company and the assured, the plaintiff could not sue upon it.

It is not an insurance of the life of Stibbe under a contract between the company and the plaintiff, but the contract, which is under seal, is between the company and Stibbe himself. In one event, the policy is to be paid to Stibbe, in another to his wife ; but the promise in either case is made to Stibbe, and he or his legal representatives only can maintain the suit.

There is no covenant with the plaintiff, but there is a covenant with Stibbe to pay the plaintiff, in a certain contingency.

She cannot sue on such a contract. *Flynn vs. North American Life Insurance Co.*, 115 *Mass.*, 449 ; *Woodberry Savings Bank vs. Charter Oak Ins. Co.*, 29 *Conn.*, 374 ; *Balto. Fire Ins. Co. vs. McGowan*, 16 *Md.*, 47.

*H. L. Emmons* and *Wm. Shepard Bryan*, for the appellee.

To explain the points under the second exception, we must advert to the issues in the cause.

The policy was void if the death was caused by the use of intoxicating drink ; or if any of the statements in the application was untrue.

The defendant set up these two defences, and the evidence was directed to these two points. The Court in the instructions granted, left these two questions to the jury. There was no other contested question of fact in the case, everything else being admitted, as appears from the first exception.

It is rather late for the defendant to say that the plaintiff's prayer left a question of law to the jury. The phraseology of the prayer is, that commonly used and has been frequently sanctioned by this Court. Among other instances there is the second prayer of plaintiff in *Balto. & Ohio R. Road vs. Fitzpatrick*, 35 *Md.*, 35 ; plaintiff's prayer in *Georgia Ins. Co. vs. Dawson*, 2 *Gill*, 368 ; plaintiff's first prayer in *B. & O. R. R. Co. vs. State, use of Trainor*, 33 *Md.*, 542 ; plaintiff's first prayer in *McMahon vs. N. C. Railway*, 39 *Md.*, 451; *Price's Case*, language of Court, 29 *Md.*, 437, at bottom of page.

It has never been supposed that the question of direct cause was not a question for the jury. If the defendant had desired any explanations to be given to the jury on this point, he should have offered a prayer for the purpose.

The amount insured was payable "in ninety days after satisfactory proofs of death." It was necessary for the

plaintiff to show that these preliminary proofs had been furnished. But the proofs were not evidence in her behalf for any other purpose than to show that she had complied with the requirements of the policy in that regard. *Citizens' Fire Ins. Co. vs. Doll*, 35 *Md.*, 89; and she did not use them for any other purpose. It was necessary to offer them, so that the Court could determine their sufficiency. They were, however, competent evidence for the defendant to show plaintiff's declarations. They were accordingly offered by it, and Dr. Keirle and Mrs. Stibbe were examined by defendant, as to the statements made by them respectively in these preliminary proofs. The burden of proof was on defendant to sustain its defences, and it examined these two witnesses for that purpose. *Piedmont, &c., Ins. Co. vs. Ewing*, 2 *Otto*, (*S. C. Reps.*,) 377; *Jones Manufacturing Co. vs. Manufacturing and F. I. Co.*, 8 *Cushing*, 82; *Insurance Co. vs. Francisco*, 17 *Wallace*, (*S. C.*,) 672. The defendant's first prayer seeks to exclude from the jury all of its own evidence on the cause of death, except Mrs. Stibbe's statement of opinion contained in the preliminary proof, and pronounces a matter of law that this defeats the recovery. Be it observed, that the statement was that mental anxiety and indulgence in drink, "caused his death in my opinion." It does not show which of these causes in her opinion was remote and proximate. The doctor's statement which was a part of the same document, and which was also offered in evidence by defendant, shows that deceased died from cerebral congestion, and that the *remote* cause was drink, and the *proximate* cause was *mental anxiety*. Mrs. Stibbe's opinion does not show that the death arose from one of the prohibited causes. Dr. Keirle's statement shows positively that it did not arise from a prohibited cause.

Cases have occurred where the preliminary proof has shown that the plaintiff was not entitled to recover; and in some of these cases, the Courts have held that the plain-

tiff could not introduce evidence, showing that the preliminary proof was not true in a material fact, which if it existed as stated in the preliminary proof, was fatal to the right of recovery. *Vide* the language of the Court in *Campbell vs. Charter Oak, &c. Co.*, 10 *Allen*, 219. In other cases, it has been held that the preliminary proofs were evidence for defendant. *Mutual Benefit L. I. Co. vs. Newton*, 22 *Wallace*, 32. The whole preliminary proof of course would be taken together, as showing what the plaintiff's statement really was. The distinction between such cases, and the case at the bar, is sufficiently obvious.

The defendant's third prayer asserts that the plaintiff cannot sue in her own name on the policy.

The policy is under seal. It is a contract made with both Solomon Stibbe, the deceased, and with the plaintiff, his wife. The defendant was authorized to make it both by its charter, Act of 1858, ch. 276, sec. 9 ; and by the Act of 1862, ch. 9, sec. 8. The language of the application shows that plaintiff was one of the contracting parties, as also her husband. It is signed in her name, as well as her husband's. The policy is a contract with a double aspect ; it is a contract with Solomon to pay the insurance to him, in the event of his living until A. D., nineteen hundred and four ; it is also a contract with the plaintiff, to pay her in the event of his dying before that time. But if it were otherwise, it would be proper for the plaintiff to sue. In *Chitty's Pleading*, 1 *vol., page* 4, (*Edition of* 1833,) it is said, "if the covenant in a deed poll be *generally* 'to pay B.,' &c., there appears to be no difficulty in maintaining an action in his own name, although he did not execute the deed, and were in all respects a stranger to it." The rule is different in the case of a deed *inter partes ;* but this policy is a deed poll. Many cases may be cited where the contract is expressly made " to and with " a certain person, and he is then the party to sue. Such is not the case at bar.

BARTOL, C. J., delivered the opinion of the Court.

This is a suit brought by the appellee, widow of Solomon D. Stibbe, on a policy of insurance made by the appellant on the life of her husband. By agreement of counsel all errors in pleading were waived.

At the trial below two exceptions were reserved by the appellant, which will be disposed of in their order.

The plaintiff read in evidence the Acts of Assembly incorporating the defendant, then offered the policy under the seal of the defendant, which the defendant's counsel admitted had been duly executed, and delivered to Solomon Stibbe, and further admitted that Solomon died on the 29th day of January 1875 and that the plaintiff was his widow. The plaintiff then offered the proofs of death, which it was admitted, were exhibited to the defendant on or about the 9th day of February 1875, and that they were filled up from printed blanks furnished by the defendant. It was also admitted that Solomon had paid to the defendant all the premiums due on the policy to the time of his death. Here the plaintiff closed her case, whereupon the defendant objected to the admissibility in evidence, of the policy of insurance, because the plaintiff had not offered in evidence, the application for insurance on the life of the deceased and moved the Court to exclude the policy from the consideration of the jury. The refusal of this motion forms the ground of the *first* bill of exceptions. But the decision of the question intended to be raised thereby, has become altogether immaterial, inasmuch as the " application " was afterwards given in evidence by the defendant, and the company was therefore in no respect injured or prejudiced by the action of the Court, in overruling the motion. The *second* bill of exceptions brings before us for review the rulings of the Court below upon the prayers; and the first question we shall consider is the legal right of the plaintiff to maintain a suit upon the policy.

This question is raised by the defendant's *third* prayer, which asserts the proposition that "it is not competent for the plaintiff to sue in her own name, and in her own right upon the policy of insurance." It is argued by the appellant's counsel that the contract of insurance was made with Solomon, and being under seal, although made for appellee's benefit, she cannot maintain an action at law thereon, not being a party to the covenant. The law on this subject is well settled. "It is an inflexible rule," says *Chitty*, (1 *Ch. Pl.*, 3,) "that if a *deed* be *inter partes*, that is on the face of it expressly describe and denote who are the parties to it, (as between A. of the first part and B. of the second part) C. if not expressly named as a party cannot sue thereon, although the contract purport to be made for his sole advantage, and contain an express covenant *with him* to perform an act for his benefit, in such case C. is a stranger to the deed, and violence would be done to the expressed intention of the parties, were he to be allowed to maintain an action in his own name."

For this the author cites *Bushell vs. Bevan*, 1 *Bing. N. C.*, 120, and several other authorities, many more might be cited. *Flynn vs. N. A. L. Insurance Co.*, 115 *Mass.*, 449, referred to by the appellant, was decided and no doubt correctly, in accordance with this rule; but we think it has no application to this case. The contract here sued on is not one strictly *inter partes*, but is the covenant of the appellant alone, not executed by any other person, it is therefore a *deed poll*, and it is laid down by *Chitty* (1 *Ch. P.*, 4,) that "if the covenant in a *deed poll* be *generally* to pay B.  *  *  *  *  *  * there appears to be no difficulty in his maintaining an action in his own name, although he did not execute the deed, and were in all other respects a stranger to it." See also, *Platt on Covenants*, 7, 8, (3 *L. Lib.*)

But in our opinion the contract of insurance was made with her as well as with her husband. The Act of 1862,

ch. 9, gave her the power to obtain the insurance, and the defendant was authorized to make it, both by its own charter, 1858, *ch.* 276, *sec.* 9, and by the Act of 1862. The application for insurance shows that she was one of the contracting parties, it is signed with her name as well as her husband's, he signs "*as the person whose life is insured,*" and she "*as the person for whose benefit the insurance is made.*" The covenant in the body of the policy is "to pay to Solomon, at the time named, if he should be then living, and if he should die previous thereto, to pay to his wife Caroline or her legal representatives."

It is therefore a covenant made directly with her, and there can be no valid objection to her maintaining a suit upon it in her own name; it was therefore not error to reject the appellant's *third* prayer.

In the application for insurance, the habits of Solomon Stibbe were represented to be sober and temperate; and the conditions of the policy were, that it should be void *if the representations were untrue, or if the death of the party assured should be caused by the use of intoxicating drink or opium.* The *fourth* and *fifth* prayers of the defendant, which were granted, gave it the full benefit of its defence before the jury, based upon the conditions in the policy to which we have referred. The *first* and *second* prayers of the defendant were refused, and require to be noticed.

By the terms of the policy the amount insured was payable "*in ninety days after satisfactory proofs of death.*" To show that the plaintiff had complied with this requirement of the policy, the proofs of death were offered by her at the trial, they were admissible for that purpose and for no other and their sufficiency was a question for the Court to determine. *Citizens' F. Ins. Co. vs. Doll, 35 Md.,* 89, 102. They were offered also by the defendant and were of course admissible, as declarations of the plaintiff. These

preliminary proofs consisted of, or were accompanied with, a number of answers; to questions furnished by the appellant in printed blanks, filled up by the appellee, the physician, the undertaker, and one *Stokes*, a friend of the deceased. Among the questions answered by each of these persons, except the undertaker, was one requiring a statement of the cause of the death. In the answer to this question the appellee's statement was, " He was caused a great deal of mental anxiety on account of business troubles, which caused him to indulge somewhat in intoxicating drinks, and this anxiety and indulgence in drink caused his death in my opinion."

The appellant contends that this statement is conclusive upon the appellee, and the first prayer asks an instruction to the jury " that the affidavit of the plaintiff contained in the proof of death offered in evidence by her, is conclusive upon her as to the cause of the death of the insured, and that the cause of death set forth in said affidavit is not such as to entitle her to recover in this action, upon the policy of insurance sued on in this case."

This prayer seeks to give undue force and effect to the statement made by the appellee; this did not properly constitute any part of the proof of death required by the policy, it was the mere declaration made by the appellee of her opinion and belief as to the cause of the death, and as such the defendant was entitled to rely upon it before the jury; not as conclusive, but as evidence to be considered by the jury in connection with all the other evidence in the case upon the question as to the actual cause of the death of the insured, a question which the jury alone could decide and which was submitted to them by the appellant's fourth prayer. Upon that question the jury had before them not only the statement of the appellee, but also that of the physician accompanying the proofs of death which formed a part of her declaration and to be taken with it. They had also the testimony of a number of witnesses

examined both by the plaintiff and the defendant, all of which was to be considered by the jury, and it would have been error to instruct them, as asked by the defendant's first prayer, that any part of this evidence was to be taken by itself as conclusive. For these reasons this prayer was properly refused, and for the same reasons the second prayer was also properly refused. This prayer asked an instruction "that if the deceased died from a different cause from that set forth in the affidavit of the plaintiff contained in the proofs of death offered in evidence by her, then the plaintiff is not entitled to recover in this action. This prayer like the first is erroneous in ascribing to the declaration of opinion made by the plaintiff a conclusive effect, and in separating it from other parts of the evidence on the same subject, which had been given to the jury; all of which, as we have said, was to be considered by them in making their verdict." *Life Ins. Co. vs. Francisco,* 17 *Wallace,* 672.

As to the plaintiff's prayer, we discover no defects in it and think it was properly granted. The only objection made to it, by the appellant's counsel in the argument, is " that it was calculated to mislead the jury," in submitting to them to find what was the *direct* cause of Stibbe's death. The objection is to the use of the word " *direct,*" but we think the jury could not have been misled. The statement of the physician was that the disease of which Stibbe died was " *cerebral congestion* caused proximately by mental anxiety and remotely by drink."

By the terms of the policy, it was to be void, "if the death shall be caused by the use of intoxicating drink or opium." The meaning of this is that the things prohibited should be the *direct* cause of the death in order to avoid the policy, and it was not error so to instruct the jury.

*Judgment affirmed.*

(Decided 7th March, 1877.)