# 130                     HORNE v. WALTON.

## DANIEL H. HORNE

*v.*

## JOHN WALTON.

*Filed at Ottawa May 15, 1886.*

1. FRAUD AND DECEIT—*loan of money procured thereby—tender of securities back to the agent through whom the fraud was committed.* An attorney procured a loan of money to be made to a person residing in another State, upon the false and fraudulent representation that such person was very wealthy, and was the owner of valuable real estate in this State, which he offered to mortgage to secure the loan, the attorney knowing the falsity of his representations.  The attorney gave the lender the note of such person, with a mortgage upon property to which the mortgagor had no title.  The attorney testified that he was agent for the person giving the note and mortgage, and the lender tendered back the note and mortgage to the attorney, and brought his action against him to recover damages for the fraud and deceit practiced by him: *Held,* that the offer to surrender the note and mortgage to the defendant was sufficient to authorize the action, and that it was not necessary for the plaintiff to seek the maker of the note and mortgage, or his personal representatives, he being dead, and surrender the same to them.

2. MEASURE OF DAMAGES—*money borrowed upon fraudulent security —distinguished from a fraudulent sale of land.* Where a sale of land is made by false and fraudulent representations as to its value, quality or condition, the measure of damages in an action by the purchaser, is the difference between the actual value of the land and its value as it was represented to be at the time of the sale.  But this rule has no application to a loan of

money made in reliance upon fraudulent and 'false representations as to the title and value of the land given as a security for the repayment of the loan.

3. So in an action on the case against a party procuring a loan of money through fraud and deceit, upon representations that the security offered was good, when, as a matter of fact, it was known by the defendant to be worthless, and this was not known to the plaintiff, it was *held*, the true measure of damages was the amount of money thus obtained, with interest thereon from the time it was received.

4. PRACTICE—*time to object—for variance between the pleadings and the proof.* In case of a variance between the averments of the declaration and the proofs, in an action on the case to recover for money obtained through fraud and deceit practiced by the defendant, it should be pointed out on the trial, to give an opportunity to obviate the same by amendment. It is too late to make the objection for the first time on appeal or error.

5. INSTRUCTION—*referring to the evidence as the basis of belief.* An instruction is defective in form, if it requires the jury to believe, without requiring the belief to be from the evidence, and its refusal will not be error, especially when its substance is embraced in one given.

6. SAME—*singling out particular portions of the evidence.* There is no error in refusing an instruction which selects conversations testified to by the party asking it, and attempts to lay down certain conditions upon which, alone, such conversations can be regarded as proved by a preponderance of the evidence, especially when the duty of the other party to establish his case by a preponderance of evidence, is stated in another ·instruction which was given.

7. SAME—*at variance with the evidence.* In an action against a party for fraud and deceit in obtaining a loan of money to one whom he fraudulently represented to be a wealthy man, the defendant asked the court to instruct the jury to find for him, unless they found, from the evidence, that the person to whom the loan was made was insolvent at the time of the commencement of the suit, which was refused. The evidence clearly showed that such person had been dead some two years before the suit was brought: *Held*, no error in refusing the instruction.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Mr. L. D. CONDEE, for the appellant:

The foundation of this action is fraud and deceit. Bouvier defines fraud to be "unlawfully, designedly and knowingly to appropriate the property of another without a criminal intent,"

and deceit "to be fraudulent misrepresentation or contrivance by which one man deceives another who has no means of detecting the fraud, to the injury and damage of the latter."

False representations as to the condition, situation, title and value of real estate are not actionable, unless the purchaser has been fraudulently induced to forbear inquiry, and then the means used must be set out in the declaration. *Brown* v. *Bledsor*, 1 Idaho, (N. S.) 76; *Crown* v. *Carriger*, 66 Ala. 590; *Paisley* v. *Freeman*, 2 Smith's L. C. 142.

An averment that defendant well knew his representations to be false, is not maintained by proof that they were false, and that he made them ignorantly, (*Lord* v. *Goddard*, 13 How. 198,) nor by proof that defendant had reasonable cause to believe they were untrue. *Pearson* v. *Howe*, 1 Allen, 207.

The party making the false representations must know them to be such, and the person seeking to recover must have relied on them as true, and have been induced to act upon the statement. *Wheeler* v. *Randall*, 48 Ill. 182; *Hiner* v. *Richter*, 51 id. 299; *Merwin* v. *Arbuckle*, 81 id. 502.

The rule of law is *caveat emptor* if the purchaser has equal means of information, and it is not contended but that appellee had an equal opportunity with appellant to examine the records of real estate transfers, and determine for himself the validity of the title to the lots described in the mortgage from Carpenter to Walton. *Hill* v. *Bush*, 19 Ark. 522.

When a purchaser with full means of knowledge within his reach, fails to avail himself of such information, he can not recover. *Post* v. *Williams*, 6 Ind. 219; *Veasy* v. *Dotin*, 3 Allen, 380.

The court erred in refusing defendant's instruction as to the measure of damages, which announced the correct rule. Sedgwick on Measure of Damages, 708; *Drew* v. *Beall*, 62 Ill. 168.

As to defendant's second instruction, see *State* v. *Gates*, 20 Mo. 400.

Mr. JOSEPH WRIGHT, for the appellee:

The case of *Paisley* v. *Freeman*, cited, does not apply to the case of one lending his money to a friend who promises good real estate security.

An objection that the proof does not sustain the allegations, or that there is a variance, must be made on the trial, so that the declaration can be amended. *City of Elgin* v. *Kimball*, 90 Ill. 356; *Thompson* v. *Hoagland*, 65 id. 310; *Benevolent Society* v. *Feltsam* 97 id. 474; *Driggers* v. *Bell*, 94 id. 223; *Schill* v. *Reisdorf*, 88 id. 411.

The case of *Drew* v. *Beall*, 62 Ill. 168, is good law as to the measure of damages in suits for deceit on a sale of land, or for deceit in relation to its quality or condition, and also where the plaintiff actually gets the title to the land. But here no title passed. As to damages, see 2 Sutherland on Damages, 257; *Frazer* v. *Peoria County*, 74 Ill. 282.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action on the case, brought by appellee in the circuit court of Cook county, to recover damages of appellant for obtaining $2000 of appellee by deceit and false and fraudulent representations. The case was tried before a jury, who returned a verdict in favor of appellee for $2900, being the sum of $2000 and interest thereon. The judgment upon this verdict was affirmed by the Appellate Court, and the case is brought to this court by appeal from the Appellate Court.

The declaration alleges, that appellee worked on the farm of one Bowen, and had $2000 deposited in the Illinois Trust and Savings Bank of Chicago; that appellant (an attorney) came to Bowen's place in August, 1877, and represented to appellee, that the bank was unsafe, and it would be better to invest the money in real estate security; that appellant stated, that he had been agent for fourteen years for one Carpenter, of Cincinnati, who was worth over $100,000, and owned some

lots in Chicago, worth $5000; that Carpenter wanted $2000 to pay off the taxes upon these lots, and would pay double the interest, paid by the bank; that the title to the lots was good, and appellant knew it to be good; that appellant induced appellee to surrender up the $2000, and gave to appellee, as security, Carpenter's note for that amount, due in six months, drawing eight per cent interest, and a mortgage, executed by Carpenter, on the lots in question; that appellant represented that the investment was safe, and that the money would be used in paying the accumulated taxes upon said lots; that the representations, so made, were false, and known to be false by appellant, and were made for the purpose of deceiving and defrauding appellee; that, upon the maturity of the note, appellee demanded his money of appellant, but was told that Carpenter had died, and nothing could be done, until the estate was settled; that the money was promised to be forthcoming in a few weeks from Carpenter's father-in-law, but has never been paid; that appellant declined to furnish an abstract of title; that the title was not good in Carpenter; that the money was not used to pay taxes on the lots; that the taxes had been paid on the lots for years prior to 1877, by Mary Kenyon; that Mary Kenyon was the owner in fee of the lots, etc.

The appellant complains, that the circuit court erroneously refused to give an instruction, asked by him, which told the jury that, if they should find the issues for the plaintiff, "the true measure of damages would be the difference in value between the value of the property, at the time the transaction was had, and what it would have been worth at said time, had it been, as the jury believe from the evidence, said defendant represented it to said plaintiff, and said plaintiff believed it to be from said representations." This instruction was properly refused, as being inapplicable to the facts of the case. Where there has been a sale of land, and fraudulent representations have been made as to its value or quality

or condition, the measure of damages is, undoubtedly, the difference between the actual value of the land and the value of it, as it was represented to be at the time of the sale. In this case, there was no sale, but a loan. Appellee is alleged to have parted with his money, as a loan, upon representations, that a certain security offered him, was good, when, as matter of fact, it was known to be worthless. The evidence tends to show, that Carpenter was worth nothing pecuniarily, and had no title to the lots mortgaged, and that appellee never saw Carpenter and knew nothing about him or his title to the lots, except what he learned from appellant. He did not buy after an examination of the record title and in reliance upon such examination. He was not furnished by the borrower with an abstract of title, as is customary in such cases. He relied solely upon the statements of appellant, who was a lawyer, as to the validity of the title. The evidence, also, tends to show, that, before suit brought, the note and mortgage were tendered back by appellee to appellant. The actual loss of appellee was the money he parted with, and interest thereon, while he was kept out of the possession of it. We think the correct measure of damages, in this case, was the amount of such loss, to-wit: the $2000, and interest.

It is not perceived, why the same rule does not apply here, as is laid down in cases, where there is a breach of the covenant of seizin. "For a total breach of the covenant of seizin or good right to convey, where nothing passes by the conveyance, the measure of damages is the amount of consideration paid, and interest." (2 Sutherland on Damages, p. 257.) To the same effect is the case of *Frazer* v. *Supervisors of Peoria County*, 74 Ill. 282. Under the instructions given, the jury estimated the damages in accordance with this rule.

The refusal of appellant's second refused instruction is claimed to have been erroneous. The instruction was defective in form, in requiring the jury to "believe," and in not requiring them to "believe from the evidence." While this

formal defect may not have been sufficient, of itself, to have misled the jury, yet we think, that the substance of this instruction was embraced in the third instruction, which was given for appellant. The second instruction refused, singling out the conversations testified to by appellee, attempted to lay down certain conditions, upon which alone those conversations could be regarded, as proved by a preponderance of evidence. The duty of appellee to establish his case by a preponderance of evidence was stated with sufficient fairness to appellant, in the third instruction, given for him, which was in the following words :

"The jury are instructed that the burden of proof in this class of cases is upon the party holding the affirmative ; and if the jury find that the evidence bearing upon the plaintiff's case is evenly balanced, or that it preponderates in favor of the defendant, then the plaintiff can not recover, and the jury should find for the defendant.".

This third instruction also embraces substantially all, that is material or pertinent to the issue in appellant's fifth refused instruction.

Appellant's ninth refused instruction was properly refused. It required the jury to find, that appellee had offered to surrender the "*notes*" to the said Carpenter or his legal representatives. There was only one note, and the evidence tends to show, that this note, indorsed by appellee, and the mortgage, securing it, accompanied by an assignment thereof, duly executed by appellee, were tendered to appellant before suit brought. Appellee, who was a poor gardener, working as a laborer upon a gentleman's country place, was not required, under the circumstances of this case, to go to Cincinnati and look up the legal representatives of Carpenter. Appellant, not Carpenter, gave him the note and mortgage. Appellant swears, that he was Carpenter's agent and had been for fourteen years. It was sufficient, therefore, that the offer to surrender the securities was made to appellant.

As to appellant's tenth refused instruction, which required the jury to find for appellant, unless they found from the evidence, "that said Carpenter was insolvent * * * at the time of the commencement of this suit," it is sufficient to say, that, by the undisputed evidence in the case, Carpenter had been dead some two years before "the commencement of this suit."

It is objected, that there was, in some particulars, a variance between the averments in the declaration and the proof, as introduced. No such variance was pointed out ·in the trial court. If it existed, an objection pointing it out, should have been made on the trial, so that the declaration could be amended to conform to the proofs. It is too late to make such an objection here. *City of Elgin* v. *Kimball,* 90 Ill. 356.

Whether or not appellant's representations were false, and whether or not he knew them to be false, when he made them, are questions of fact, in reference to which the judgment of the Appellate Court, affirming that of the circuit court, is final.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*